IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

**FILED**
DISTRICT COURT OF GUAM

JUL - 3 2003

MARY L. M. MORAN
CLERK OF COURT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. **03-00022** |
| ) | |
| UNIVERSITY OF GUAM, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## SETTLEMENT AGREEMENT

The United States of America ("United States") gave notice to the University of Guam

("University") (jointly, "the parties") of intent to file a Complaint to enforce the provisions of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"),

based on charges of discrimination filed between September 1996 and March 1998 by eleven

former employees ("charging parties") with the Equal Employment Opportunity Commission

("EEOC") that were subsequently referred to the Department of Justice, involving EEOC charge

numbers: 370971277; 370970518; 370971065; 370970568; 370971025; 370971118;

370970390; 370970719; 370970852; 370970442; 370970101; 370970816; 370970307; and

370970872.     In its Complaint, the United States alleges that the University discriminated

against the charging parties by subjecting them to discriminatory terms, conditions and privileges

of employment and discharging some of them based on race and/or national origin in violation of

Section 703(a) of Title VII, as amended, 42 U.S.C. § 2000e-2(a), and/or in retaliation for

complaining about what was reasonably believed to be employment discrimination prohibited by Title VII, in violation of Section 704(a) of Title VII, as amended, 42 U.S.C. § 2000e-3(a).

In response to the United States' notice of intent to sue the University, and while the University specifically and unequivocally denied the United States' allegations of violations of Title VII, the parties entered into settlement negotiations, including a voluntary mediation proceeding from March 10 - 14, 2003. During this mediation, the parties arrived at a tentative agreement on many of the terms of a mutually acceptable settlement agreement. The parties, desiring that this action be settled by an appropriate settlement agreement without the burden of protracted litigation, agree to personal and subject matter jurisdiction of this Court. Furthermore, the parties hereby waive, for the purposes of this Settlement Agreement ("Agreement") only, hearings and findings of fact and conclusions of law on all issues, and stipulate that this Agreement serves as a fair and full settlement of all issues raised in the Complaint filed in this case and that this Agreement is full, final and binding between the parties as to the issues raised in this Complaint. The parties acknowledge that this Court has not reached findings on or otherwise adjudicated the issues raised in this Complaint. This Agreement shall not be construed as an admission of violation of law or of any legal fault by the University, nor any adjudication or finding of any wrongdoing or violation of any applicable federal or Guam law or regulation. This Agreement sets forth the entire agreement between the parties.

In resolution of this action, the parties hereby AGREE and the Court expressly APPROVES, ENTERS and ORDERS the following:

## A. **SPECIFIC RELIEF**

1.      While expressly denying the allegations of the United States, and in full and complete

2

settlement of the claims of the United States for individual relief, the University agrees to offer a maximum total amount of $775,000, plus interest as set forth in Paragraph 2 below ("Total Settlement Sum"), in monetary relief payable to the charging parties. The Total Settlement Sum will be divided among the charging parties as set forth in a letter provided to the University by the United States under separate cover prior to the execution of this Agreement. Of the Total Settlement Sum, $70,000 will be deemed already paid in the form of release by the University of certain debts to the University up to the amount of $70,000 ("debt extinguishment amount"). In order to accept any of the relief to be offered to him or her by the University under this Agreement, each charging party must execute and return a release, according to the provisions in Paragraph 3, in the form set forth in Appendix A. Should any charging party fail to timely execute and return the release, the amount that was allocated to that charging party will be deducted from the Total Settlement Sum and will be retained by the University. The United States will not further seek relief on behalf of that charging party.

2.    The Total Settlement Sum will be allocated and paid in portions to each charging party (who executes the release within the time frame permitted by this Agreement) according to a schedule that has been confirmed in writing by the United States to the University under separate cover prior to the execution of this Agreement. The University will make four disbursements to a registered bank escrow account of the Total Settlement Sum, according to the following timeline of dates ("disbursement dates"): distribution of $170,000 (inclusive of the debt extinguishment amount) will be paid to the charging parties within sixty (60) days from the entry of the Agreement by the Court, consistent

3

with the provisions of Paragraph 3; distribution of $201,667 will be paid by October 31, 2003; distribution of $213,904 will be paid by October 31, 2004; and distribution of $207,784 will be paid by October 31, 2005. The disbursement amounts and schedule detailed herein include interest at the rate of 3%, compounded quarterly, beginning to accrue as of November 1, 2003 on any and all outstanding payment amounts.

3.    Within fifteen (15) days after the date of entry by the Court of this Agreement, the United States shall notify each charging party of its terms by mailing to each of them, via certified mail, return receipt requested, a copy of the letter in the form set forth in Appendix B. The letter shall inform each individual that in order to accept the relief offered to him or her, he or she must execute and return the Appendix A release form to the United States, to be postmarked within thirty (30) days of his or her receipt of the letter unless good cause, as determined exclusively by the United States, exists for his or her failure to do so. A copy of the applicable release form and this Agreement shall be enclosed with the letter. For each charging party who timely executes the release, the University will cause the bank to transmit from the escrow account the payments to that charging party, according to the schedule of payments provided to the University by the United States but no later than fifteen (15) days from the receipt by the University of the executed release form, to the address of record of the charging party as furnished by the United States to the University in such schedule of payments. The United States will forward to the University any address changes of the charging parties occurring during the period of time of the disbursement dates.

4.    Throughout the disbursement process, the University shall notify the United States that

4

payment has been received by the charging party by promptly forwarding a copy of the canceled check or other appropriate documentation indicating payment. For each charging party who receives a monetary payment in a given calendar year, the University will provide him/her with an Internal Revenue Service Form 1099 reflecting the entire amount of monetary payment made in that year.

5.      The University and the United States shall each pay their own incidental costs associated with the carrying out of the terms of this Agreement and such administrative costs shall not be deducted from the Total Settlement Sum that has been allocated for individual monetary relief.

6.      For any charging party who timely executes the release, the University, if applicable, will record in the University's personnel file for that charging party a termination from the University as a resignation and/or will remove from the charging party's personnel file all copies of any negative performance evaluations written during the period of January 1, 1997 until the end of the charging party's employment with the University. Any charging party may notify a prospective employer of the availability of the University Senior Vice President to provide an employment reference on his or her behalf. The Senior Vice President will not provide a negative employment reference for any of the charging parties. The Senior Vice President will provide, if requested by a prospective employer, dates of employment, position(s) held, and wage and/or salary history.

## B. GENERAL RELIEF

7.      The University affirms that it will not engage in any act or practice that unlawfully discriminates against any employee because of that employee's race and/or national

5

origin.

8.    The University affirms that it will not retaliate against any person because that person has opposed what he or she reasonably believed to be discriminatory policies or practices; filed a charge, either formal or informal, with the University; filed a charge of discrimination with the EEOC; or participated in or cooperated with the initiation, investigation, litigation or administration of this case or this Agreement.

### Complaint and Investigation Procedure

9.    The University will take appropriate measures to ensure that complaints of discrimination (including harassment) based on race, national origin, or retaliation ("complaints") are promptly resolved pursuant to its policies and that prompt and effective corrective action is taken in response to any meritorious complaints as determined by its policies. These measures include, but are not limited to, establishing an internal complaint procedure that designates the Equal Employment Opportunity ("EEO") Officer with the responsibility for receiving and assuring the proper resolution, pursuant to University policy, of complaints filed, including investigating allegations of discrimination as appropriate, making and documenting factual findings, and recommending corrective action where appropriate. All complaints shall be resolved according to the provisions of this Agreement and the procedures set forth in Appendix C. If any University official, agent or representative receives a complaint, he or she shall promptly forward it to the EEO Officer unless the complaint is against the EEO Officer, in which case the University shall designate an individual independent of the University and who is not employed by any entity of the government of Guam, who is trained and experienced in EEO matters, to

6

appropriately respond to the complaint in the manner provided by the policy attached as Appendix C. The University Senior Vice President shall be a liaison to the EEO Officer in the event that a complaint is brought against a University administrator or official in a position of authority over the EEO Officer.

10.     No later than sixty (60) days after entry of this Agreement, and periodically thereafter as appropriate, the EEO Officer, the Senior Vice President and the Human Resources Director shall be provided with training on the law of employment discrimination and the appropriate methods for investigating and responding to complaints of discrimination in employment based on race, national origin and retaliation. The EEO counselors at the University will be provided with substantially similar training prior to the end of the 2003 calendar year. In the event that the University names a new individual to any of the positions of EEO Officer, Senior Vice President, Human Resources Director, or the role of EEO Counselor, the new individual(s) shall receive substantially similar training prior to or within 30 days after the assumption of the duties of the position or role. The University shall provide counsel for the United States with written confirmation of all trainings held pursuant to this paragraph at the time of quarterly reports to the United States set forth in Paragraph 11 below. It is understood that training may include general legal advice and oversight regarding the appropriate handling of such complaints and/or specific legal advice and oversight on actual complaints and such training may, in the discretion of the University, be provided in whole or in part by the counsel for the University who is signatory to this Agreement. Evidence of training will not require the disclosure of attorney work product, the legal advice given on specific complaints or

7

confidential attorney-client communications.

11. During the period of this Agreement, the University shall retain all relevant records that come into its possession concerning any and all complaints, whether made to a local or federal agency or through any internal University process. The University shall retain those so as to respond to requests of the United States to provide it with copies of any or all documents relating to such complaints. By March 31, June 30, September 30 and December 31 of each year during the time period that this Agreement remains in effect, the University shall provide to counsel for the United States a copy of each such complaint, or, if the complaint is an oral complaint, a written summary of the complaint created by the University. The University will also provide to counsel for the United States by those dates the evidence of training referred to in Paragraph 10. During the term of this Agreement, the United States shall have the right, upon reasonable written notice to the University's counsel without further order of this Court, to request information on and a copy of all non-privileged documents relevant to such complaints, including the University's investigation and resolution of such complaints. If the University objects to production of any requested document, any unresolved dispute will be handled under the dispute resolution process described in Paragraph 17.

### Issuance and Distribution of Policy Prohibiting Discrimination Based on Race, National Origin and Retaliation

12. No later than thirty (30) days after the entry of this Agreement, the University shall promulgate the written policy prohibiting employment discrimination based on race, national origin and retaliation attached as Appendix C.

8

13.     The University shall thereafter issue and distribute the policy attached as Appendix C to
        all of its employees within thirty (30) days of its promulgation, and to all employees
        whom it hires after entry of this Agreement within fifteen (15) days of their
        commencement of active employment at the University. The University will send to the
        United States a certification that all employees have received the policy within thirty (30)
        days of its initial distribution. Thereafter, with regard to any and all new hires, the
        University will provide a certification that they have received the policy, pursuant to the
        provisions in this Paragraph, to counsel for the United States by March 31, June 30,
        September 30 and December 31 of each year during the time period that this Agreement
        remains in effect.

14.     The University shall post and maintain the policy attached as Appendix C on the
        University website. In addition, for a period of ninety (90) days from the promulgation of
        the policy attached as Appendix C, the University shall post a notice on the website
        announcing the existence of the policy.

<u>**Employment Discrimination Training**</u>

15.     No later than the close of the 2003-2004 academic year, the University shall provide
        training to all management level and supervisory employees regarding Title VII's
        prohibitions against employment discrimination, prevention of employment
        discrimination based on race, national origin and retaliation, and management response to
        complaints of employment discrimination. The training will include an explanation of
        University procedures regarding initiation and investigation of a complaint. The
        University will require that any individual promoted into a management level or

9

supervisory position after the training has been completed will receive substantially similar training within ninety (90) days of his or her promotion. The University will select a qualified individual or individuals, with the concurrence of the United States, to conduct the training outlined in this paragraph. The United States' concurrence will not be unreasonably withheld.

16.    All University management and supervisory employees shall sign an acknowledgment of attendance for the training described in Paragraph 15. Within thirty (30) days of the close of the 2003-2004 academic year, the University will send to the United States a certification that all such employees have received the training. Thereafter, with regard to any and all subsequent trainings, as provided for in Paragraph 15, the University will provide a certification of the trainings to counsel for the United States on a quarterly basis, by March 31, June 30, September 30 and December 31 of each year during the time period that this Agreement remains in effect. The University will keep on file all signed acknowledgments for the duration of this Agreement.

## C. <u>COMPLIANCE</u>

17.    The term of this Agreement runs for a period of three (3) years from the date the Court enters this Agreement as provided in Paragraph 21. If a dispute arises concerning compliance with the Agreement, the parties shall engage in good faith efforts to resolve the issue before seeking action by the Court. Prior to moving the Court for resolution, a party shall provide the other party with written notice of the dispute and an opportunity to resolve the issue. If the parties are unable to resolve the issue within thirty (30) days after written notice of the dispute has been given by one party to the other party, any party may

10

move the Court for resolution. Alternatively, in the event the parties are unable to resolve such disagreement within thirty (30) days after written notice of the dispute has been given by one party to the other party, upon agreement of the parties, either party may schedule a session with a mediator or a special master, at the earliest convenience of the parties and the mediator or the special master, not to exceed thirty (30) days, to resolve the disagreement. The parties will jointly choose the mediator or special master and will divide evenly the costs of the services of the mediator or special master. Each party will pay its own costs incurred as a result of the mediation or special master hearing. If either party deems the mediation or special master hearing unsuccessful, either party may then move the Court to resolve the disagreement.

18. During the life of this Agreement, the University shall retain records in whatever form, (including any computer disks and computer, video or audio tapes) necessary to document its affirmative obligations under the Agreement, including, but not limited to, payment of monetary relief to the charging parties, implementation of the policies provided for in the Agreement, institution of required trainings and implementation of its complaint review process for complaints of discrimination subject to monitoring as set forth in this Agreement. The University shall make those records and all other documents relevant to its compliance with and implementation of this Agreement available for inspection and copying within thirty (30) days of any written request sent by the Department of Justice to counsel for the University.

11

## D. **NOTICE**

19.    All documents required to be delivered under this Agreement to the United States shall be

sent to the attention of, if by U.S. Mail:

> William B. Fenton
> Jenny R. Yang
> U.S. Department of Justice
> Civil Rights Division
> Employment Litigation Section
> 950 Pennsylvania Avenue, NW
> Washington, D.C.  20530;

or, if by overnight delivery service:

> William B. Fenton
> Jenny R. Yang
> U.S. Department of Justice
> Civil Rights Division
> Employment Litigation Section
> 601 D Street, NW, Room 4038
> Washington, D.C.  20004

20.    All documents required to be delivered under this Agreement to the University shall be

sent to the attention of:        Michael J. Vartain, Esq.
> Vartain Law Group
> 601 Montgomery Street
> Suite 300
> San Francisco, CA  94111-2660

12

## E. JURISDICTION OF THE COURT

21.     The parties stipulate that this Court shall retain jurisdiction of the matters covered by this

Agreement for a period of three (3) years from the date of entry of this Agreement for

such action as may be necessary or appropriate to effectuate the purposes of the

Agreement.  This period may be extended by order of this Court for good cause shown.


Agreed and Consented to:

On behalf of Plaintiff
United States of America

RALPH F. BOYD, Jr.
Assistant Attorney General

WILLIAM B. FENTON
JENNY R. YANG
Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Dated: _6/16/03_

University of Guam

Dated: _6 / 30 / 03_

Approved as to form:

MICHAEL J. VARTAIN
Vartain Law Group
601 Montgomery Street, #300
San Francisco, CA  94111-2660
Attorneys for University of Guam

Dated: _6/30/03_


LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Civil Chief
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Agana, Guam  96910

Dated: _6/30/03_

SO ORDERED this _2nd_ day of _July_, 2003.

JOHN S. UNPINGCO
Chief Judge
District Court of Guam

Notice is hereby given that this document was
entered on the docket on _JUL 0 3 2003_
No separate notice of entry on the docket will
be issued by this Court.
            Mary L. M. Moran
     Clerk, District Court of Guam
By: _____  JUL 0 3 2003
     Deputy Clerk          Date

RECEIVED
JUN 30 2003
DISTRICT COURT OF GUAM
HAGATNA, GUAM

13

## E. JURISDICTION OF THE COURT

21. The parties stipulate that this Court shall retain jurisdiction of the matters covered by this Agreement for a period of three (3) years from the date of entry of this Agreement for such action as may be necessary or appropriate to effectuate the purposes of the Agreement. This period may be extended by order of this Court for good cause shown.

Agreed and Consented to:

On behalf of Plaintiff
United States of America

RALPH F. BOYD, Jr.
Assistant Attorney General

WILLIAM B. FENTON
JENNY R. YANG
Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dated: 6/16/03

University of Guam

Dated: _____

Approved as to form:

MICHAEL J. VARTAIN
Vartain Law Group
601 Montgomery Street, #300
San Francisco, CA 94111-2660
Attorneys for University of Guam

Dated: 6/23/03

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Civil Chief
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Agana, Guam 96910

Dated: _____

13

**APPENDIX A**

## RELEASE OF ALL CLAIMS

For and in consideration of the acceptance of all or any part of the relief offered to me by the University of Guam, pursuant to the provisions of the Settlement Agreement between the United States and the University of Guam dated _____ and approved and entered by the Honorable _____, United States District Judge, on _____ in <u>United States v. University of Guam</u>, Civil Action _____ (D. Guam), I, _____, on behalf of my heirs, successors and assigns, forever release and discharge the University of Guam and all its past, current, and future officers, attorneys, consultants, agents, representatives, employees, contractors, faculty members, staff, boards, trustees, affiliates and affiliates' employees and officers, and all successors and assigns ("Releasees") of and from any and all damages, claims, charges, causes of action, grievances, complaints, indemnities and obligation, including but not limited to those which are based upon any other territory or federal law, and any other contract, tort, retaliation, constitutional, and/or any employment-related, and/or any other claims directly or indirectly arising out of, or in any way connected to the Complaint filed in the above civil action and EEOC charge nos. _____, which accrued prior to the date of this Release. This Release shall be a complete bar to any claims asserted in contravention of it, no matter the forum.

I further agree that I will not institute a civil action or seek to intervene against the University of Guam in any pending civil action alleging employment discrimination on the basis of EEOC charge number(s) _____, or any other EEOC charges filed before the date of this release, or the Complaint in Civil Action _____, or any of the facts alleged in EEOC charge number(s) _____ or any other EEOC charge or Complaint filed before the date of this release against the University of Guam and/or any of its agents, employees, University Board of Regents members, officials, designees, and predecessors and successors in interest.

I understand that the relief to be given to me, including the payment to me of any monetary amount, does not constitute an admission by the University of Guam of the validity of any claim raised by me or on my behalf.

This release constitutes the entire agreement between the University of Guam and myself, without exception or exclusion. I am aware I will not receive an offer of employment with the University.

I acknowledge that a copy of the Settlement Agreement in this action has been made available to me for my review.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this _____ day of _____, _____.

_____
[Name]
Social Security No. _____

Subscribed and sworn to before me this
_____ day of _____, _____

_____
Notary Public
My commission expires: _____

**APPENDIX B**

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

[insert name and address of charging parties]

> Re:    United States of America v. University of Guam
>        Civ. Act. No.    (D. Guam)

Dear Dr./Mr./Ms._____:

The United States and the University of Guam ("University") have entered into a Settlement Agreement settling the case of United States v. University of Guam, Civil Action No. ___ (D.Guam). A copy of the Settlement Agreement, which was executed by the United States and the University in _____ and approved and entered by the Court on _____, is enclosed.

Pursuant to the Settlement Agreement, the University is offering a total monetary amount to be divided among the charging parties. The amount payable to you has been designated by the United States to be $ _____. You should be aware that all or a portion of the monetary amount may be subject to federal, state and/or local tax, for which you would be responsible. [The University also is offering to remove all copies from your personnel file of any negative performance evaluations written during the period of January 1, 1997 until the end of your employment with the University.] [The University also is offering to insert a change in your personnel file at the University to record your termination from the University as a resignation from the University.]

In order to accept the University's offer, you must execute the enclosed release and return it, within thirty (30) days of your receipt of this letter, to counsel for the United States at the following address:

> William B. Fenton
> Jenny R. Yang
> Attorneys
> Employment Litigation Section
> Civil Rights Division
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, D.C. 20530

Counsel for the United States will, in turn, forward a copy of your executed release to the University in care of its counsel.

[The University will cause its bank escrow account to pay the first installment of the monetary amount offered to you within fifteen (15) days of its receipt of your executed release.

Subsequent payments will be forwarded to you no later than October 31, 2003, October 31, 2004 and October 31, 2005. Interest at the rate of 3% will begin to accrue on the unpaid portion of the overall monetary amount as of November 1, 2003. This interest will be included in your payments of October 31, 2004 and October 31, 2005.] [You have informed the parties that you do not desire any monetary relief in the settlement of your charge. However, the University has agreed to forgive any outstanding balance on your Protech Award and to forgive at least a portion of a University grant award to a third party identified by you to the University.]

If you decline the relief offered by the University, the University will nevertheless have satisfied its obligation to the United States pursuant to the Settlement Agreement, and the United States will not seek additional relief on your behalf.

If you have any questions concerning the Settlement Agreement or the University's offer to you, you may contact one of the following attorneys at the U.S. Department of Justice:

> William B. Fenton
> Jenny R. Yang
> Attorneys
> Employment Litigation Section
> Civil Rights Division
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, D.C. 20530
> (202) 307-3925 or (202) 514-3168
>
> Mikel W. Schwab
> Civil Chief
> Pacific News Bldg.
> 238 Archbishop Flores St., Ste 502-A
> Agana, Guam 96910
> (318) 262-6618

Sincerely,

David J. Palmer
Chief
Employment Litigation Section

By:

Jenny R. Yang
Senior Trial Attorney
Employment Litigation Section

cc:    Mikel Schwab, AUSA
       Michael J. Vartain, Esq.
Enclosures

**APPENDIX C**

**UNIVERSITY OF GUAM**
**POLICY FOR EQUAL EMPLOYMENT OPPORTUNITY AND**
**NON-DISCRIMINATION/NON-HARASSMENT**

**Intent:** The University is committed to maintaining the campus community as a place of work and study for faculty, staff and students, free of all forms of discrimination and harassment that are unlawful under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., or other applicable law. The University prohibits unlawful discrimination or harassment against any member(s) of the University community including faculty, student-employees, staff and administrators and applicants for such positions. Students (including student-employees) should also review the policies as summarized in the student handbook, and faculty should consult the faculty collective bargaining agreement. In case of questions or concerns regarding this Policy, please contact the University's Equal Employment Opportunity Office (insert name address and telephone number) or the University's Senior Vice President (insert name address and telephone number).

**No Discrimination/ No Retaliation:** The University is an equal opportunity employer and is firmly committed to non-discrimination in its hiring, termination, compensation, promotion decisions and in all other employment decisions and practices and in the application of its personnel policies and collective bargaining agreements. In compliance with all applicable laws, except where a *bona fide* occupational qualification exists, employment decisions will be made irrespective of the employee's or applicant's race, color, religion, religious creed, national origin, age (except for minors), gender, citizenship status, military service status, and/or any other status protected by law. This Policy prohibits retaliation because one has in good faith filed a complaint concerning behavior prohibited by this policy, or has reasonably opposed, reported or stated the intent to report such behavior or is participating in a related investigation, proceeding or hearing regarding such a matter.

All members of the University community must comply with this policy. The University will take prompt and effective corrective action in response to any complaint showing a violation of this policy.

The University will reasonably accommodate qualified individuals with disabilities as defined by federal law if the individual is otherwise qualified to safely perform all essential functions of the position and if it will be done without undue hardship to the University.

The University's policy is supported by, and consistent with federal law. This policy thus accepts the mandate set forth in Titles VI and VII of the Civil Rights Acts of 1964 and Title IX of the Educational Amendments of 1972.

1

**No Harassment:**    Harassment based on race, gender, national origin, color, religion, religious creed, age, disability, citizenship status, military service status, or any other status protected by law, is prohibited by University policy. Prohibited harassment in any form, including verbal and physical conduct, visual displays, threats, demands and retaliation is a violation of this policy and will not be tolerated.

Prohibited acts that constitute harassment take a variety of forms. Examples of the kinds of conduct that may constitute harassment include, but are not limited to:

- Verbal conduct such as epithets, derogatory comments, slurs, or unwanted sexual advances, invitations, or comments;
- Visual conduct such as derogatory posters, photography, cartoons, drawings or gestures;
- Physical conduct such as unwanted touching, blocking normal movement, or interfering with work because of gender or any other status protected by law;
- Threats and demands to submit to sexual requests in order to keep your job or avoid some other loss, and/or offers of job benefits or conditions in return for sexual favors;
- Retaliation in the form of adverse actions because one has opposed, reported or stated the intent to report harassment or because one is participating in a related investigation, proceeding or hearing.

Sexual Harassment: Sexual harassment is a specific form of prohibited harassment which occurs when an individual's behavior constitutes (1) unwelcome sexual advances or (2) unwelcome requests for sexual favors, or (3) other unwelcome verbal or physical behavior of a sexual nature where:

1.    Submission to such conduct is made explicitly or implicitly a term or condition of an individual's education or employment; or
2.    Submission to, or rejection of, such conduct by an individual is used as the basis for academic or employment decisions affecting the individual's welfare; or
3.    Such conduct has the purpose or effect of unreasonably interfering with an individual's welfare, academic, residential life or work performance, or creates an intimidating, hostile, or offensive educational, living or work environment at the University.

**Complaint Review Process:**

**In General:**    The University encourages individuals who believe they may have experienced discrimination or harassment in violation of University policy, or are aware that another person has allegedly engaged in such discrimination or harassment, to report such information using this complaint process. It is expected that review of these matters will begin expeditiously and that complaints will be resolved promptly and ordinarily no later than 45 days from receipt of the complaint. Confidentiality will be maintained to the extent appropriate in consideration of the circumstances. In addition to these procedures, complaints may be filed with the Equal Employment Opportunity Commission (EEOC) at the Hawaii District Office, (insert address)

2

and the Office of Civil Rights of the US Department of Education at Federal Building, 50 United Nations Plaza, Room 239, San Francisco, CA 94102.

**Intake:** Complaints may be made in the following ways: An individual ("Complainant") may present the complaint to the University EEO officer, a University EEO counselor (collectively, "University intake person"), or to an administrator or officer of University in the reporting relationship above the complaining individual or one who is above the person about whose behavior the complaint is made. A list of the available University intake persons and their phone numbers is contained on the University web site. Wherever possible, the complaint should be made in writing and as soon as possible after the Complainant becomes aware of the prohibited behavior. If the Complainant declines to present a complaint in writing, the University intake person or the other University administrator or officer who receives the complaint will prepare a memorandum of the complaint made in oral fashion and in all situations promptly notify the University's EEO officer of the filing of the complaint, unless the complaint is against the University's EEO officer. Should the Complainant choose not to file a complaint with these persons, he/she may bring the complaint to the University's senior vice president or any vice president, dean or other senior University administrator, and should reference the matter wherever possible as arising under the University Policy for Equal Employment Opportunity and Non-Discrimination/Non-Harassment. The University's EEO officer shall be responsible to see that the Complaint is handled in the manner prescribed in this Policy, unless the complaint is against the University's EEO officer in which case the University's Senior Vice President shall do so.

The University's EEO officer will inform the Complainant and where appropriate, the person whose conduct is alleged to violate the policy ("Respondent"), of this Policy, the procedures for resolution and the administrator or officer of the University who will be responsible for a final determination of the complaint ("decision maker"). The selection of the decision maker will be made with consideration of the reporting and and/or academic relationships of the Complainant, Respondent and others involved. It is not possible to prescribe in advance the identity of the decision maker in all situations, given the unique organization of academic institutions.

**Process:** The Complaint will be reviewed, generally by the University's EEO Officer, and resolved according to this policy, including that an investigation will be conducted if one is warranted. If the complaint is against the University's EEO officer or an individual in supervision over the EEO officer, the University will designate an individual independent of the University and who is not employed by any entity of the government of Guam, who is trained and experienced in EEO matters, to conduct the investigation if one is warranted and/or otherwise appropriately inquire into the complaint. Any investigation will proceed expeditiously and appropriately to investigate the matter, including interviews of individuals, if necessary, and a written summary of the facts relevant to the complaint will be prepared and, if any, the recommended corrective action.

3

**Resolution:**    The University shall take prompt and effective action in response to the complaint.  The decision maker will make a determination of the complaint in a manner consistent with the particular facts and circumstances of the complaint.

If the decision maker finds that the complaint in whole or in part shows a violation of the University policy, the decision maker shall determine what corrective action is appropriate and including, where appropriate, disciplinary action of the Respondent or others.  Violations of this policy may result in disciplinary action such as warning, suspension or termination from employment or of any other affiliation with the University, etc.  The decision maker may determine that the complaint does not show a violation of the University policy.  If so, the decision maker shall so inform the Complainant and Respondent.

The decision maker will prepare a written summary of his/her determination.  After the determination regarding the complaint has been made, to the extent appropriate the determination will be communicated in person to the Complainant within 5 days if the Complainant is available to meet.

**Non-Retaliation:**    No member of the University community may be subjected to interference, coercion or reprisal for seeking advice concerning a matter under this Policy, reasonably  filing a complaint, or otherwise in good faith participating in the internal complaint process or in a complaint process external to the University.  The University will not so retaliate against any person making a complaint and will not knowingly permit retaliation.

**Appeal of Discipline:**    Respondents or others who receive disciplinary action as a result of a complaint under this process may appeal under the provisions of the appropriate grievance procedures, if any, for faculty, staff, and students.

**Other University Procedures:**    Time periods for filing of complaint, investigation and resolution should be advanced if proceedings under University  collective bargaining agreements or other University procedures so warrant it.

4